Evelyn WERNER,
Plaintiff-Appellant-Petitioner,

v.

Kenneth HENDREE and Michael Honeck,
Defendants-Respondents.

Evelyn WERNER,
Plaintiff-Appellant,

v.

Kenneth HENDREE and Michael Honeck,
Defendants-Respondents.

Supreme Court

*Nos. 2008AP2045 and 2009AP2322.*
*Oral argument October 7, 2010.—Decided February 16, 2011.*

2011 WI 10

(Also reported in 795 N.W.2d 423.)

For the plaintiff-appellant-petitioner, there were briefs by *Andrew J. Shaw* and *Shaw Law Offices,* and *Joseph F. Owens,* and *Arthur & Owens, S.C.,* and oral argument by *Joseph Owens.*

For the Defendants-Respondents, the cause was argued by *John J. Glinski,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general.

¶ 1. ANNETTE KINGSLAND ZIEGLER, J. This case comprises two separate appeals. A brief summary of the facts and procedural history is necessary to explain the posture of our review.

¶ 2. Eighty-four-year-old Evelyn Werner (Werner) was physically attacked in her home and had her safe stolen by three assailants, one of whom was Kenneth

Hendree (Hendree). Hendree had previously visited Werner's home several times while employed as an insurance examiner by the Office of the Commissioner of Insurance (OCI). Werner filed suit against both Hendree and Michael Honeck (Honeck), Hendree's supervisor.

¶ 3. The Waukesha County Circuit Court, Judge Kathryn W. Foster presiding, dismissed Werner's complaint against Honeck on the grounds of governmental immunity. At a subsequent hearing, the circuit court ruled that Hendree was ineligible for indemnification from the State under Wis. Stat. § 895.46 (2007–08).[1] For purposes of combining the matters for later appeal, Werner's counsel requested that the circuit court not sign and file the above two orders until a trial was held and judgment was entered as to Hendree's liability and damages. The Attorney General, counsel for Honeck, did not voice an objection. Accordingly, on the record, multiple times, the circuit court assured counsel that it would not sign and file the order dismissing Honeck and the order ruling that Hendree was ineligible for indemnification until the case was entirely resolved as to Hendree. However, contrary to those assurances and unbeknownst to the parties, the circuit court prematurely signed the two orders on December 3, 2007, several months before the trial was conducted and judgment was entered against Hendree. Once the orders were signed, the clerk of the circuit court was then obligated to file the orders. *See* Wis. Stat. § 806.06(2).

¶ 4. In fact, it was on June 24, 2008, that the circuit court held a bench trial and determined Hendree's liability and Werner's damages. On July 11, 2008, the circuit court signed the judgment against

---

[1] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

Hendree. Werner filed her notice of appeal on August 18, 2008. Werner appealed from the following: (1) the order dismissing Honeck on the grounds of governmental immunity, (2) the order ruling that Hendree was ineligible for indemnification, and (3) the July 11, 2008, judgment against Hendree.

¶ 5. Werner timely appealed from the July 11, 2008, final judgment entered after trial. However, because the circuit court did not adhere to its assurances to hold the earlier orders for signature and filing until after trial, Werner's notice of appeal was filed more than 90 days after the date on which the order dismissing Honeck and the order ruling that Hendree was ineligible for indemnification were filed. Accordingly, as to those orders, the court of appeals dismissed Werner's appeal for lack of jurisdiction. *See* Wis. Stat. § 808.04(1).

¶ 6. Werner petitioned this court for review of the court of appeals' published per curiam decision, *Werner v. Hendree*, 2009 WI App 103, 320 Wis. 2d 592, 770 N.W.2d 782, which dismissed as untimely her appeal of (1) the order dismissing Honeck and (2) the order ruling that Hendree was ineligible for indemnification. We granted Werner's petition for review, and the parties presented oral arguments.

¶ 7. Subsequent to the court of appeals decision, Werner moved the circuit court to vacate and reenter those two orders pursuant to Wis. Stat. § 806.07(1)(a). The circuit court denied Werner's motion. Werner then appealed the circuit court's denial of her motion to vacate and reenter the orders to the court of appeals at the time that Werner's first appeal was pending before this court. Consequently, the court of appeals stayed Werner's second appeal pending our decision in the first appeal.

¶ 8. Pursuant to Wis. Stat. § (Rule) 809.61[2] and Article VII, Section 3, subsection 3 of the Wisconsin Constitution,[3] upon the court's own motion, we removed Werner's second appeal from the court of appeals in the interests of judicial economy. Thus, we are also reviewing the circuit court's order denying Werner's motion to vacate and reenter the order dismissing Honeck and the order ruling that Hendree was ineligible for indemnification.

¶ 9. Our holding today resolves both appeals.

¶ 10. Concerning the order ruling that Hendree was ineligible for indemnification, we conclude that Werner's appeal survives on two alternative grounds: Werner timely appealed from the order in the first instance because the order was not final, and alternatively, the circuit court erroneously exercised its discretion when it denied Werner's motion to vacate and reenter the order. Concerning the order dismissing Honeck, we conclude that Werner's appeal survives on the second basis; that is, the circuit court erroneously exercised its discretion when it denied Werner's motion to vacate and reenter the order. Our analysis is broken down into two parts.

¶ 11. First, we hold that the court of appeals improperly dismissed as untimely Werner's appeal of the order ruling that Hendree was ineligible for indemnification, irrespective of the date on which the order

---

[2] Wisconsin Stat. § (Rule) 809.61 provides that the supreme court may take jurisdiction of an appeal in the court of appeals "upon the supreme court's own motion."

[3] Article VII, Section 3, subsection 3 of the Wisconsin Constitution states: "The supreme court may review judgments and orders of the court of appeals, may remove cases from the court of appeals and may accept cases on certification by the court of appeals."

was filed. This is so because the order was not final under Wis. Stat. § 808.03(1). The order did not dispose of the entire matter in litigation as to either Werner or Hendree,[4] and accordingly, was not appealable until July 11, 2008, when the circuit court entered judgment on Hendree's liability and Werner's damages.

¶ 12. Second, we hold that the circuit court erroneously exercised its discretion when it denied Werner's motion to vacate and reenter (1) the order dismissing Honeck and (2) the other order ruling that Hendree was ineligible for indemnification. The circuit court erroneously concluded that it was without the power to vacate and reenter the orders given Werner's failure to bring the motion within one year after the orders were filed.

¶ 13. Accordingly, we reverse both the court of appeals decision dismissing Werner's first appeal and the circuit court's order denying Werner's motion to vacate and reenter the orders. We remand to the circuit court with instructions to vacate and reenter the order dismissing Honeck and the order ruling that Hendree was ineligible for indemnification.

## I. FACTUAL BACKGROUND

¶ 14. We derive the facts of this case from Werner's complaint and her testimony before the circuit court.[5] As they have been relayed by Werner, the facts of this case are quite unsettling.

---

[4] By that point in litigation, Honeck had been dismissed on the grounds of governmental immunity. Furthermore, the State was not a named party and chose not to become a party through intervention or otherwise.

[5] Hendree never answered Werner's complaint and has yet to appear in this action. Accordingly, we accept as true Werner's allegations against Hendree. See Wis. Stat. § 802.02(4); Estate of Otto v. Physicians Ins. Co. of Wis., 2008 WI 78, ¶ 42, 311

¶ 15. In August 2005, Werner, then 84 years old and wheelchair-ridden,[6] filed a complaint with OCI regarding her annuities. Beginning in September 2005 and continuing through October 2006, Hendree, then employed by OCI as an insurance examiner, visited Werner in her home. Hendree informed Werner that he had been assigned by OCI to gather information about her claim.

¶ 16. Hendree's visits to Werner's home were numerous, unannounced, and often took place in the evenings and on the weekends. Hendree stayed for hours each visit and asked Werner detailed questions about her finances. Trusting of his position with OCI, Werner always let Hendree into her home and answered his questions.

¶ 17. Throughout this time period, Werner made several telephone calls to OCI to complain about Hendree's frequent and strange visits. According to Werner, she spoke with Honeck, Hendree's supervisor, but nothing was done. Werner averred that no one at OCI ever told her that Hendree was not authorized to visit her after-hours or so frequently.

¶ 18. Hendree's final visit to Werner's home took place on Sunday, October 29, 2006, and lasted for about three hours. The next day, Werner again telephoned OCI and complained to Honeck.

---

Wis. 2d 84, 751 N.W.2d 801 ("The ordinary rule is that the allegations in a complaint 'are admitted when not denied' in the answer of a defendant against whom the allegations are made. Furthermore, when a defendant is determined to be in default, the factual allegations against the defendant, except those relating to the amount of damages, ordinarily are deemed true." (Internal footnotes omitted.)).

[6] Werner passed away in June 2010 subsequent to this court's decision to grant her petition for review.

¶ 19. On November 1, 2006, Hendree resigned from his position at OCI. At the time, Werner was unaware of Hendree's resignation.

¶ 20. On the evening of December 13, 2006, two men and one woman carrying a gun broke into Werner's home, physically attacked her, and stole her safe. The female attacker hit Werner on the head with the gun, and one of the other attackers held a pillow over Werner's face. Werner never saw the attackers' faces, but she recognized one of their voices as belonging to Hendree.

¶ 21. Around the same time, Victoria Colletti (Colletti), Werner's nightshift caregiver, arrived at Werner's home and noticed two people getting into a car parked inside Werner's garage. Colletti called out to them, but they did not respond. A third person then came running out of the house, pointing a gun at Colletti. Colletti got back into her car, backed out of the driveway, and called 911 on her cellular phone. The other car followed Colletti's until she arrived at a gas station to meet up with a police officer.

¶ 22. Werner was transported by ambulance to a hospital, where she was treated for head injuries.

¶ 23. To our knowledge, no one has been criminally charged in connection with Werner's attack. However, during the time-span of Hendree's visits to Werner's home and unbeknownst to Werner, Hendree had pending criminal charges for stalking and second-degree sexual assault.[7] Those criminal charges were filed on July 21, 2005.

---

[7] According to court records, that criminal case has since been resolved. It is entirely unrelated to the case now before this court.

¶ 24.   On December 28, 2006, the Director of the Bureau of Market Regulation for OCI sent a letter to Werner. The letter provided, in relevant part:

> As I told you in our telephone conversation on December 27, 2006, Mr. Hendree resigned his position effective November 1, 2006 and is no longer a state employee.
>
> I have asked Mike Honeck to contact you regarding your questions about your complaint file. Mr. Honeck was Ken Hendree's supervisor and is very familiar with your complaint file.

## II.   PROCEDURAL POSTURE

¶ 25.   On February 2, 2007, Werner served a notice of claim on the Attorney General pursuant to Wis. Stat. § 893.82.[8] The notice of claim specifically named OCI as the agency involved and Hendree as the agent involved. In her notice of claim, Werner alleged that Hendree's October 29, 2006, visit to her home gave rise to a cause of action for negligent hiring, retention, training, or supervision. In particular, Werner claimed that OCI should have suspended Hendree during the time of his pending criminal charges, and had it done so, Hendree

---

[8] Wisconsin Stat. § 893.82(3) provides, in relevant part:

[N]o civil action or civil proceeding may be brought against any state officer, employee or agent for or on account of any act growing out of or committed in the course of the discharge of the officer's, employee's or agent's duties, . . . unless within 120 days of the event causing the injury, damage or death giving rise to the civil action or civil proceeding, the claimant in the action or proceeding serves upon the attorney general written notice of a claim stating the time, date, location and the circumstances of the event giving rise to the claim for the injury, damage or death and the names of persons involved, including the name of the state officer, employee or agent involved. . . .

never would have come into contact with Werner or targeted her home for robbery.

¶ 26. On April 30, 2007, Werner filed a complaint against Hendree and Honeck. The State was not named as a defendant, and the State chose not to intervene in the lawsuit. Werner alleged several causes of action against Hendree, including trespass, aiding and abetting assault and battery, theft, and intentional infliction of emotional distress. As to Honeck, Werner alleged negligent supervision of an employee.

¶ 27. Hendree never filed an answer and never appeared in this action. Nonetheless, as will be discussed later, the circuit court held a bench trial on Hendree's liability and ultimately entered judgment against him.

¶ 28. The Attorney General appeared on behalf of Honeck and filed an answer. Honeck asserted several affirmative defenses, including, *inter alia*, that the complaint failed to state a claim upon which relief can be granted, Werner failed to comply with Wis. Stat. § 893.82, and Honeck is entitled to discretionary immunity.

¶ 29. On June 21, 2007, Honeck filed a motion to dismiss the complaint against him. Honeck argued that Werner failed to strictly comply with Wis. Stat. § 893.82, namely because the notice of claim did not name Honeck as the agent involved and did not allege any act by Honeck that caused injury to Werner. In addition, Honeck argued that Werner failed to plead, and further, cannot establish, any exception to the general rule of public officer immunity.

¶ 30. In her brief in opposition to Honeck's motion to dismiss, Werner argued that her notice of claim was more than sufficient to give the State meaningful notice and information to investigate her claim. In

addition, Werner contended that Honeck was not immune from her negligent supervision claim because Honeck knew that Werner was in a dangerous situation and had no discretion not to act to protect her.[9]

¶ 31.  On September 10, 2007, the circuit court held a hearing on Honeck's motion to dismiss. At the outset of its decision, the circuit court acknowledged Hendree's failure to appear and consequently expressed "no difficulty on [its] part in accepting the averment or the contents of the complaint, both the original and the amended[,] that [Werner] was the victim of [an] egregious crime." The court found that Hendree was "at least initially . . . obviously within the scope of his employment" when he began visiting Werner's home.[10]

¶ 32.  On that same date, the circuit court granted Honeck's motion to dismiss but stated on the record that it would not sign the order until the case was

---

[9] On August 1, 2007, Werner filed an amended complaint and specifically pled the "known danger" exception to governmental immunity. *See Kierstyn v. Racine Unified Sch. Dist.*, 228 Wis. 2d 81, 96, 596 N.W.2d 417 (1999) ("[T]he known danger exception is effective only in those cases where the 'nature of the danger is compelling and known to the officer and is of such force that the public officer has no discretion not to act.'" (quoting *C.L. v. Olson*, 143 Wis. 2d 701, 715, 422 N.W.2d 614 (1988))). On August 29, 2007, Honeck moved the court to dismiss the amended complaint against him, relying on the same arguments made in his original motion to dismiss.

[10] Later in the hearing, the Attorney General interjected to purportedly contest the issue of whether Hendree was acting within the scope of his employment:

> Your Honor, may I interject something with respect to Mr. Hendree? We have in our Answer denied that he was within the scope of his employment [with] what he was doing and under the statute, 893 or 895.46 [the] Attorney General does have a right to participate to contest that issue.

resolved as to Hendree. The circuit court granted Honeck's motion to dismiss on the grounds that Honeck was protected from liability by governmental immunity. The court reasoned that even assuming Honeck had been aware of Hendree's pending criminal charges, the circumstances did not impose on Honeck a nondiscretionary duty to act; rather, Honeck had the discretion to choose between alternative courses of action. Moreover, the circuit court concluded that Werner's notice of claim did not strictly, or even substantially, comply with Wis. Stat. § 893.82 in regards to Honeck. The court found that the notice of claim referred to Honeck only in passing and did not afford the State an adequate opportunity to investigate Honeck's potential responsibility for Werner's injury.

¶ 33. At the close of the hearing, Werner's counsel requested that for purposes of appeal, the circuit court not sign its order dismissing Honeck until Hendree's liability is resolved. After hearing no objection from the Attorney General, the circuit court stated on the record: "The court will refrain from filing any orders of today's proceeding until we resolve the issue with the matter which pertains to Mr. Hendree."

¶ 34. On October 10, 2007, because Hendree failed to answer, Werner moved the court to grant her a default judgment against Hendree and requested that a jury determine the amount of her damages.[11]

¶ 35. On October 12, 2007, the Attorney General moved the court for a ruling that Hendree had refused to cooperate in the defense of this litigation, and consequently, pursuant to Wis. Stat. § 895.46(1),[12]

---

[11] Werner subsequently waived her right to a jury trial and agreed to a bench trial on the issue of damages.

[12] Wisconsin Stat. § 895.46(1)(a) provides:

Hendree was ineligible for indemnification from the State. The Attorney General denied that Hendree was acting within the scope of his employment. Nevertheless, assuming that he was, the Attorney General asserted that Hendree would still be ineligible for indemnification based on his failure to cooperate in the defense.

> If the defendant in any action or special proceeding is a public officer or employee and is proceeded against in an official capacity or is proceeded against as an individual because of acts committed while carrying out duties as an officer or employee and the jury or the court finds that the defendant was acting within the scope of employment, the judgment as to damages and costs entered against the officer or employee in excess of any insurance applicable to the officer or employee shall be paid by the state or political subdivision of which the defendant is an officer or employee. Agents of any department of the state shall be covered by this section while acting within the scope of their agency. Regardless of the results of the litigation the governmental unit, if it does not provide legal counsel to the defendant officer or employee, shall pay reasonable attorney fees and costs of defending the action, unless it is found by the court or jury that the defendant officer or employee did not act within the scope of employment. The duty of a governmental unit to provide or pay for the provision of legal representation does not apply to the extent that applicable insurance provides that representation. If the employing state agency or the attorney general denies that the state officer, employee or agent was doing any act growing out of or committed in the course of the discharge of his or her duties, the attorney general may appear on behalf of the state to contest that issue without waiving the state's sovereign immunity to suit. Failure by the officer or employee to give notice to his or her department head of an action or special proceeding commenced against the defendant officer or employee as soon as reasonably possible is a bar to recovery by the officer or employee from the state or political subdivision of reasonable attorney fees and costs of defending the action. The attorney fees and expenses shall not be recoverable if the state or political subdivision offers the officer or employee legal counsel and the offer is refused by the defendant officer or employee. If the officer, employee or agent of the state refuses to cooperate in the defense of the litigation, the officer, employee or agent is not eligible for any indemnification or for the provision of legal counsel by the governmental unit under this section.

¶ 36. Werner opposed the Attorney General's motion. Citing Wis. Stat. § 895.46(1)(a), Werner argued that the Attorney General waived the issue of whether Hendree was acting within the scope of his employment because the Attorney General failed to appear on behalf of the State to contest the issue. Moreover, assuming *arguendo* that Hendree was ineligible for indemnification from the State, Werner contended that § 895.46(1)(a) still rendered Hendree eligible for insurance coverage.

¶ 37. On November 28, 2007, the circuit court held a hearing on the Attorney General's motion and determined that Hendree was ineligible for indemnification under Wis. Stat. § 895.46. The circuit court found that Hendree clearly failed to cooperate in the defense of this litigation. Moreover, according to the circuit court, there was nothing in the record to support a finding that Hendree committed a trespass of Werner's home during the course of his employment with OCI.[13]

¶ 38. At the end of the hearing, Werner's counsel again requested that the circuit court hold the order pending judgment on Hendree's liability. The circuit

---

[13] At the close of the hearing, the Attorney General attempted to clarify the court's finding:

> Assistant Attorney General Glinski [counsel for Honeck]: . . . Is [the] court also making a finding then that Mr. Hendree— nothing has been alleged that would have been within the scope of employment.
>
> The Court: Correct.
>
> Assistant Attorney General Glinski: Prior to Mr. Hendree— prior to his leaving the employment of his insurance Commissioner.
>
> The Court: Correct . . . .

court again assured the parties that it would not sign the order until the case was resolved as to Hendree:

> I can do that, so if you can submit an order in effect at your leisure [Assistant Attorney General] Glinski, I will hold it beyond five days then pending resolution of the order for judgment on liability. I can certainly accommodate what we did with the last hearing. So I will hold that.

¶ 39. To confirm that the circuit court was to hold the two orders, Werner's counsel sent a letter to the court's clerk. The letter was dated December 3, 2007, but not filed until December 5, 2007. The letter provided, in relevant part:

> Pursuant to today's conversation, I want to make sure that the trial date is set for April 22, 2008. Also, the two orders are not to be entered until the case is done. This agreement was approved by the court on the record. If you have any questions, please contact the opposing counsel John Glinski. He will confirm this agreement. I wanted to protect the record for the appeal, especially on any time issues.

¶ 40. The circuit court subsequently initialed a notation on the letter, stating that "[t]his is all correct."

¶ 41. Nevertheless, for reasons unknown and in error, on December 3, 2007, the circuit court prematurely signed the order dismissing Werner's complaint against Honeck and the order ruling that Hendree was ineligible for indemnification under Wis. Stat. § 895.46. Once the orders were signed, the clerk of the circuit court was then obligated to file the orders. *See* Wis. Stat. § 806.06(2) ("The judge or the clerk upon the written order of the judge may sign the judgment. The judgment shall be entered by the clerk upon rendi-

527

tion."). Each order was stamped by the clerk of the circuit court as "filed" on December 3, 2007, and again on April 2, 2008. Without explanation, the court's docket reflects that both orders were filed only on April 2, 2008. As of that date, the circuit court had not yet held a trial on Hendree's liability and had not yet entered judgment on Hendree. Nevertheless, both the order dismissing Honeck and the order ruling that Hendree was ineligible for indemnification contain the following provision: "This is a final order for the purpose of filing an appeal."

¶ 42. On June 24, 2008, the circuit court held a bench trial on Hendree's liability and Werner's damages. After hearing the testimony of Werner, Colletti, and Werner's physician, the circuit court awarded Werner a $3,175,420.77 verdict against Hendree, $3 million of which was punitive.

¶ 43. On July 11, 2008, the circuit court entered judgment against Hendree pursuant to the trial verdict.[14]

¶ 44. Werner filed her notice of appeal on August 18, 2008. Her notice provided that she was appealing the circuit court's judgment against Hendree, the order dismissing Honeck, and the order ruling that Hendree was ineligible for indemnification under Wis. Stat. § 895.46.

¶ 45. According to Werner's counsel, in February 2009, upon reading Honeck's response brief to the court of appeals, Werner learned for the first time that the order dismissing Honeck and the order ruling that Hendree was ineligible for indemnification were mistakenly filed on April 2, 2008.

---

[14] Because Hendree failed to answer, the judgment against him was technically a default judgment.

¶ 46. On June 17, 2009, in a per curiam decision, the court of appeals dismissed Werner's appeal. *Werner,* 320 Wis. 2d 592. The court of appeals concluded that it lacked appellate jurisdiction because Werner filed her notice of appeal more than 90 days after April 2, 2008, the date on which the two final orders were filed. *Id.,* ¶ 1.[15] The court of appeals acknowledged the circuit court's agreement to hold entry of the final orders but ruled that "[the court of appeals'] jurisdiction is based on what actually occurred and not what was intended by the parties." *Id.,* ¶ 7. The court of appeals declined to "pretend that the orders were not entered more than ninety days before the filing of the notice of appeal." *Id.*

¶ 47. In addition, the court of appeals rejected Werner's argument that the order ruling that Hendree was ineligible for indemnification was otherwise not final. *See id.,* ¶ 9. According to the court of appeals, the Attorney General's motion for a ruling on Hendree's refusal to cooperate in the defense "had the effect of commencing a special proceeding for declaratory judgment." *Id.* Citing Wis. Stat. § 808.03(1), the court of appeals concluded that the order ruling that Hendree was ineligible for indemnification was final because it "had the effect of terminating the special proceeding and the attorney general's appearance in the action." *Id.*

¶ 48. Finally, the court of appeals noted and then dismissed Werner's suggestion that she would return to the circuit court and move for the final orders to be

---

[15] *See* Wis. Stat. § 808.04(1) ("An appeal to the court of appeals must be initiated within 45 days of entry of a final judgment or order appealed from if written notice of the entry of a final judgment or order is given within 21 days of the final judgment or order as provided in s. 806.06(5), or within 90 days of entry if notice is not given, except as provided in this section or otherwise expressly provided by law. . . . ").

vacated and reentered. *Id.*, ¶ 10. The court of appeals noted this court's decision in *Edland v. Wisconsin Physicians Service Insurance Corp.,* 210 Wis. 2d 638, 563 N.W.2d 519 (1997), but "question[ed] whether the jurisdictional infirmity can be cured in that fashion." *Werner,* 320 Wis. 2d 592, ¶ 10. The court of appeals concluded that the circuit court "is not authorized to vacate a final judgment or order for the sole purpose of extending the time for appeal." *Id.* (citing *Edland,* 210 Wis. 2d at 647).

¶ 49.  Werner petitioned this court for review of the court of appeals decision, which we granted on March 16, 2010. The parties presented oral arguments on October 7, 2010.

¶ 50.  However, on July 8, 2009, after the court of appeals issued its decision, Werner filed a motion requesting the circuit court to vacate and reenter the order dismissing Honeck and the order ruling that Hendree was ineligible for indemnification, pursuant to Wis. Stat. § 806.07(1)(a) and *Edland.* Werner cited the circuit court's multiple representations that the orders would not be filed until after the case was resolved as to Hendree. Werner argued that her reliance on the circuit court's representations should not result in Werner being deprived of her right to appeal.

¶ 51.  Honeck opposed Werner's motion to vacate and reenter the orders, arguing that the motion was untimely under Wis. Stat. § 806.07(2).

¶ 52.  On August 14, 2009, the circuit court denied Werner's motion to vacate and reenter the two orders. At the hearing on the motion, the circuit court "acknowledge[d] right off the bat that, yes, a mistake was made" by the court and that the orders should not have been filed until judgment was entered against Hendree. According to the circuit court, its calendar clerk mis-

takenly entered the orders on April 2, 2008, when handling the file with respect to another matter: "[The clerk] saw an undocketed order, didn't see the letter saying it was supposed to be held until the end, and went ahead and docketed it . . . with no notice to anyone and without specific direction of the court." The circuit court did not hesitate to accept full responsibility for the clerk's mistake. Furthermore, the circuit court acknowledged that Wis. Stat. § 806.07 could have provided Werner a remedy: "The reality is that it is a mistake that could have been corrected within the confines of the statute that recognizes that errors are made on a daily basis by well-intending individuals . . . ."

¶ 53. Nevertheless, the circuit court declined to vacate and reenter the two orders pursuant to Wis. Stat. § 806.07. The circuit court admonished Werner for not bringing the mistake to the circuit court's attention within the one-year time limit prescribed by § 806.07(2).[16] According to the circuit court, Werner was twice put on notice that the orders were prematurely filed: first on October 27, 2008, when the circuit court provided Werner with a copy of the appeal index and a second time in February 2009 when Werner received Honeck's response brief to the court of appeals. The circuit court maintained that if Werner had made a

---

[16] Wisconsin Stat. § 806.07(2) provides that if a motion to vacate is based on subsection (1)(a) ("Mistake, inadvertence, surprise, or excusable neglect") or subsection (1)(c) ("Fraud, misrepresentation, or other misconduct of an adverse party"), then the motion must be made "not more than one year after the judgment was entered or the order or stipulation was made." In this case, the order dismissing Honeck and the order ruling that Hendree was ineligible for indemnification were both entered on April 2, 2008.

531

motion to vacate and reenter the orders once Werner was put on notice of the court's error, then the motion would have been successful.

¶ 54.  Finally, the circuit court pointed to the court of appeals decision, *see Werner,* 320 Wis. 2d 592, ¶ 10, and regarded it as dropping a "huge hint" that the circuit court cannot vacate the orders for the sole purpose of extending Werner's time for appeal.

¶ 55.  Werner appealed the circuit court's denial of her motion to vacate and reenter the order dismissing Honeck and the order ruling that Hendree was ineligible for indemnification. The court of appeals stayed briefing on that appeal pending this court's review of the court of appeals decision in *Werner,* 320 Wis. 2d 592.

¶ 56.  On October 28, 2010, upon this court's own motion, we removed from the court of appeals Werner's appeal of the circuit court's denial of her motion to vacate and reenter the orders. *See* Wis. Stat. § (Rule) 809.61; Wis. Const. art. VII, § 3(3).

¶ 57.  We now reverse both the court of appeals decision dismissing Werner's first appeal and the circuit court's order denying Werner's motion to vacate and reenter the orders. We remand to the circuit court with instructions to vacate and reenter the order dismissing Honeck and the order ruling that Hendree was ineligible for indemnification.

III.  STANDARD OF REVIEW

██

¶ 58.  Whether an order is final for purposes of appeal, and in turn, whether a party timely appealed from a final order, are questions of law that this court reviews independently. *Sanders v. Estate of Sanders,*

2008 WI 631, ¶ 21, 310 Wis. 2d 175, 750 N.W.2d 806; *Tyler v. Riverbank,* 2007 WI 33, ¶ 12, 299 Wis. 2d 751, 728 N.W.2d 686.

¶ 59.   In addition, the circuit court's denial of a motion to vacate under Wis. Stat. § 806.07 is a discretionary determination that we will not reverse absent an erroneous exercise of discretion. *See Miller v. Hanover Ins. Co.,* 2010 WI 75, ¶ 29, 326 Wis. 2d 640, 785 N.W.2d 493; *Mullen v. Coolong,* 153 Wis. 2d 401, 406, 451 N.W.2d 412 (1990); *State ex rel. M.L.B. v. D.G.H.,* 122 Wis. 2d 536, 541, 363 N.W.2d 419 (1985); *Edland,* 210 Wis. 2d at 643. The circuit court erroneously exercises its discretion when it applies the wrong legal standard or if the facts of record fail to support the circuit court's decision. *See Bank Mut. v. S.J. Boyer Constr., Inc.,* 2010 WI 74, ¶ 20, 326 Wis. 2d 521, 785 N.W.2d 462. Furthermore, the circuit court erroneously exercises its discretion when it refuses to exercise its discretionary power on the erroneous ground that the power does not exist. *Farmers & Merchs. Bank v. Reedsburg Bank,* 12 Wis. 2d 212, 228, 107 N.W.2d 169 (1961).

## IV.   ANALYSIS

¶ 60.   Concerning the order ruling that Hendree was ineligible for indemnification, we conclude that Werner's appeal survives on two alternative grounds: Werner timely appealed from the order in the first instance because the order was not final, and alternatively, the circuit court erroneously exercised its discretion when it denied Werner's motion to vacate and reenter the order. Concerning the order dismissing Honeck, we conclude that Werner's appeal survives on

the second basis; that is, the circuit court erroneously exercised its discretion when it denied Werner's motion to vacate and reenter the order.

¶ 61.   Our analysis is broken down into two parts. First, we conclude that the court of appeals improperly dismissed as untimely Werner's appeal of the order ruling that Hendree was ineligible for indemnification, irrespective of the date on which the order was filed. Second, we conclude that the circuit court erroneously exercised its discretion when it denied Werner's motion to vacate and reenter (1) the order dismissing Honeck and (2) the other order ruling that Hendree was ineligible for indemnification.

A.   The court of appeals improperly dismissed as untimely Werner's appeal of the order ruling that Hendree was ineligible for indemnification.

¶ 62.   An appeal may be taken as a matter of right only from a final judgment or a final order. Wis. Stat. § 808.03(1). "A final judgment or final order is a judgment, order or disposition that disposes of the entire matter in litigation as to one or more of the parties, whether rendered in an action or special proceeding . . . ." *Id.* This court has previously held that a document must meet three conditions in order to be considered a final judgment or order for purposes of appeal: the document must (1) be entered by the circuit court, (2) dispose of the entire matter in litigation as to one or more parties, and (3) state on its face that it is the final document for purposes of appeal. *Tyler,* 299 Wis. 2d 751, ¶ 26.

██

¶ 63.   In this case, the order ruling that Hendree was ineligible for indemnification met only two of those

three conditions and thus could not be considered final. While the order was entered by the circuit court on April 2, 2008, and stated on its face that it was "a final order for the purpose of filing an appeal," the order did not dispose of the entire matter in litigation as to either Werner or Hendree.[17] By that point in litigation, Honeck had been dismissed on the grounds of governmental immunity. Moreover, the State was not a named party and chose not to intervene in the lawsuit. The order ruling that Hendree was ineligible for indemnification did not dispose of the entire matter in litigation as to either Werner or Hendree because the circuit court had not yet resolved any issue as to Hendree's liability or Werner's damages. *See Kenosha Prof'l Firefighters v. City of Kenosha,* 2009 WI 52, ¶ 38, 317 Wis. 2d 628, 766 N.W.2d 577 (concluding that a peremptory writ of mandamus did not constitute a final order under Wis. Stat. § 808.03(1) because it left at least one matter in litigation unresolved). In this case, the relevant final document was the default judgment against

---

[17] The court of appeals concluded that the order ruling that Hendree was ineligible for indemnification under Wis. Stat. § 895.46 constituted a final order because it was rendered in a special proceeding and had the effect of terminating the State's interest therein. *Werner v. Hendree,* 2009 WI App 103, ¶ 9, 320 Wis. 2d 592, 770 N.W.2d 782. We decline to adopt the court of appeals' conclusion. A final order in a special proceeding is one which, so long as it stands, precludes any further steps therein. *Sanders v. Estate of Sanders,* 2008 WI 63, ¶ 26, 310 Wis. 2d 175, 750 N.W.2d 806. In this case, the State's interest is attached to Hendree's liability. *See* Wis. Stat. §§ 893.82(3), 895.46(1). The order ruling that Hendree was ineligible for indemnification was entered before Hendree's liability had even been resolved.

Again, in this case, the State was not a named party, and for whatever reason, the State chose not to intervene in the lawsuit.

Hendree entered on July 11, 2008, because only that document disposed of the entire matter in litigation between Werner and Hendree. *See Sanders,* 310 Wis. 2d 175, ¶ 40.

¶ 64. Once judgment was entered against Hendree, Werner timely appealed from both the July 11, 2008, final judgment and the order ruling that Hendree was ineligible for indemnification.

¶ 65. Therefore, we conclude that the court of appeals improperly dismissed as untimely Werner's appeal of the order ruling that Hendree was ineligible for indemnification, irrespective of the date on which the order was filed. On that basis, we reverse the court of appeals decision.

B.  The circuit court erroneously exercised its discretion when it denied Werner's motion to vacate and reenter (1) the order dismissing Honeck and (2) the order ruling that Hendree was ineligible for indemnification.

¶ 66. Wisconsin Stat. § 806.07 prescribes the circumstances under which the circuit court may relieve a party from a judgment, order, or stipulation.[18] *M.L.B.,* 122 Wis. 2d at 539. Subsections 806.07(1)(a) through

---

[18] In its entirety, Wis. Stat. § 806.07, "Relief from judgment or order," provides:

(1) On motion and upon such terms as are just, the court, subject to subs. (2) and (3), may relieve a party or legal representative from a judgment, order or stipulation for the following reasons:

(a) Mistake, inadvertence, surprise, or excusable neglect;

(b) Newly-discovered evidence which entitles a party to a new trial under s. 805.15(3);

(c) Fraud, misrepresentation, or other misconduct of an adverse party;

(g) enumerate the specific circumstances under which a party may be entitled to relief. Subsection (1)(h) extends the grounds for relief beyond the circumstances provided in subsections (1)(a) through (g), granting the court broad discretionary authority to relieve a party from a judgment, order, or stipulation for "[a]ny other reasons justifying relief from the operation of the judgment." § 806.07(1)(h).

██

¶ 67.   In this case, after the court of appeals dismissed Werner's appeal as untimely, Werner moved the circuit court to vacate and reenter (1) the order dismiss-

---

(d) The judgment is void;

(e) The judgment has been satisfied, released or discharged;

(f) A prior judgment upon which the judgment is based has been reversed or otherwise vacated;

(g) It is no longer equitable that the judgment should have prospective application; or

(h) Any other reasons justifying relief from the operation of the judgment.

(2) The motion shall be made within a reasonable time, and, if based on sub. (1)(a) or (c), not more than one year after the judgment was entered or the order or stipulation was made. A motion based on sub. (1)(b) shall be made within the time provided in s. 805.16. A motion under this section does not affect the finality of a judgment or suspend its operation. This section does not limit the power of a court to entertain an independent action to relieve a party from judgment, order, or proceeding, or to set aside a judgment for fraud on the court.

(3) A motion under this section may not be made by an adoptive parent to relieve the adoptive parent from a judgment or order under s. 48.91(3) granting adoption of a child. A petition for termination of parental rights under s. 48.42 and an appeal to the court of appeals shall be the exclusive remedies for an adoptive parent who wishes to end his or her parental relationship with his or her adoptive child.

ing Honeck and (2) the order ruling that Hendree was ineligible for indemnification, pursuant to Wis. Stat. § 806.07(1)(a). Subsection (1)(a) permits the circuit court to relieve a party from a judgment, order, or stipulation on the grounds of "[m]istake, inadvertence, surprise, or excusable neglect." § 806.07(1)(a).

¶ 68.   The circuit court immediately acknowledged that it made a mistake and that the order dismissing Honeck and the order ruling that Hendree was ineligible for indemnification should not have been filed until judgment was entered against Hendree. Furthermore, the circuit court recognized that its mistake "could have been corrected" within the confines of Wis. Stat. § 806.07. Nevertheless, the circuit court denied Werner's motion to vacate and reenter the orders. The circuit court concluded that it was without the power to vacate and reenter the orders given Werner's failure to bring the motion within one year after the orders were filed. That conclusion was in error.

¶ 69.   Generally, a motion for relief under Wis. Stat. § 806.07 must be brought "within a reasonable time." § 806.07(2). However, a motion based specifically on § 806.07(1)(a) shall be made "not more than one year after the judgment was entered or the order or stipulation was made."[19] § 806.07(2). In this case, the order dismissing Honeck and the order ruling that Hendree was ineligible for indemnification were both entered on April 2, 2008. Werner did not file her motion to vacate and reenter the orders until July 8, 2009. Largely because Werner failed to bring the motion within one year after the orders were filed, the circuit court

_____

[19] The one-year time limit is also applicable to motions made under subsections (1)(b) and (c). *See* Wis. Stat. §§ 806.07(2), 805.16(4).

concluded that it was without the power to vacate and reenter the orders. In fact, the circuit court maintained that if Werner had made her motion within one year after the orders were filed, then the motion would have been successful.

¶ 70.  However, contrary to the circuit court's conclusion, the circuit court had the power under Wis. Stat. § 806.07 to vacate and reenter the orders, even though Werner did not file her motion within the one-year time limit prescribed in § 806.07(2). This court has expressly held that even if the movant's claim sounds in § 806.07(1)(a) and is brought outside of the one-year time limit, the motion can still be granted under the broader subsection (1)(h). *M.L.B.*, 122 Wis. 2d at 552–53.[20]

---

[20] Werner filed her motion to vacate and reenter the orders 15 months after the orders were mistakenly entered. The dissent regards the 15–month time period as utterly unreasonable, lamenting that our holding subjects final judgments "to attack for an unlimited number of years," dissent, ¶ 90, and "indefinitely extends the timeframe for bringing a motion" under Wis. Stat. § 806.07(1)(h), *id.*, ¶ 115. The dissent's position defies our holding in *State ex rel. M.L.B. v. D.G.H.*, 122 Wis. 2d 536, 553, 363 N.W.2d 419 (1985), in which we explicitly recognized that a motion can still be granted under § 806.07(1)(h) even when the claim sounds in § 806.07(1)(a) and, more important, even when the motion is brought outside of the one-year time limit. Hence, in *M.L.B.*, "[t]he seminal case addressing the interpretation and application of subsection (h)," *see Miller v. Hanover Ins. Co.*, 2010 WI 75, ¶ 67, 326 Wis. 2d 640, 785 N.W.2d 493 (Bradley, J., concurring), this court expressly anticipated the reasonableness of bringing a § 806.07 motion beyond 12 months after the judgment or order was entered. Contrary to the dissent's perception, our conclusion in this particular case that Werner reasonably filed her § 806.07 motion three months beyond the one-year time limit does not translate into condoning a limitless timeframe under § 806.07(1)(h).

■■
■

¶ 71. Wisconsin Stat. § 806.07(1)(h) grants the circuit court broad discretionary authority to relieve a party from a judgment, order, or stipulation for "[a]ny [] reason[] justifying relief from the operation of the judgment." In keeping with that broad authority, this court has recognized that § 806.07(1)(h) must be " 'liberally construed to provide relief from a judgment whenever appropriate to accomplish justice.' " *Miller,* 326 Wis. 2d 640, ¶ 33 (quoting *Shanee Y. v. Ronnie J.,* 2004 WI App 58, ¶ 11, 271 Wis. 2d 242, 677 N.W.2d 684); *see also Conrad v. Conrad,* 92 Wis. 2d 407, 418, 284 N.W.2d 674 (1979). At the same time, when applying § 806.07(1)(h), the circuit court must be mindful of the competing policy favoring the finality of judgments. *See Larry v. Harris,* 2008 WI 81, ¶ 18, 311 Wis. 2d 326, 752 N.W.2d 279; *Edland,* 210 Wis. 2d at 644; *M.L.B.,* 122 Wis. 2d at 550. Thus, § 806.07(1)(h) should be applied only in those cases in which "the sanctity of the final judgment is outweighed by 'the incessant command of the court's conscience that justice be done in light of *all* the facts.' " *M.L.B.,* 122 Wis. 2d at 550 (quoting *Bankers Mortg. Co. v. United States,* 423 F.2d 73, 77 (5th Cir. 1970)). In such "extraordinary circumstances," relief is justified. *Id.* at 552.

■

¶ 72. Accordingly, the proper test under Wis. Stat. § 806.07(1)(h) for a motion that in part sounds in subsection (1)(a) but is brought outside the one-year time limit is "whether there are extraordinary circumstances justifying relief in the interest of justice." *Id.* at 553.

¶ 73. In this case, extraordinary circumstances justify relief under Wis. Stat. § 806.07(1)(h). Specifically, despite the circuit court both orally and in writing

540

stating that it would hold the orders so that one appeal could later be taken after trial, it did not so hold the orders. Here, Werner's counsel's reliance on the court's representation to hold the orders provides a basis for extending Werner's time to appeal under § 806.07. Werner's counsel had no reason to be on guard that the court would sign and file the orders before trial.

¶ 74. Indeed, the circuit court is without authority to vacate and reenter an order or judgment "when its sole basis for doing so is the unadorned desire to allow an appeal." *Edland,* 210 Wis. 2d at 647. However, in *Edland,* we held that a circuit court's acknowledged mistake in failing to send notice of an order to the parties was sufficiently compelling under Wis. Stat. § 806.07(1)(a) to outweigh the goal of finality and provide a basis for extending the time to appeal. *Id.* at 648. In that case, the circuit court did not mail a copy of its order to the parties, despite the court's contrary intention as evidenced by the order's carbon copy signal naming the parties' attorneys. *Id.* at 641. The parties did not become aware of the order's entry until after the expiration of the 90–day time limit for appeal. *Id.* (citing Wis. Stat. § 808.04(1)). The plaintiffs moved the circuit court to vacate and reenter the order pursuant to Wis. Stat. § 806.07(1)(a). *Id.* at 642. The circuit court acknowledged its mistake and granted the motion. *Id.* The court of appeals then certified the case to this court, asking us to determine whether the plaintiffs' failure to timely appeal the original order deprived the court of appeals of jurisdiction. *Id.* In *Edland,* however, the court did not assure the parties orally and in writing that it would mail to them a copy of the order.

¶ 75. Nonetheless, on review, we held that the circuit court appropriately exercised its discretion by

granting the motion to vacate and reenter the order under Wis. Stat. § 806.07(1)(a). *Id.* at 648. Our holding was based on the fact that the record reflected the circuit court's intention to send notice of the order to the parties, the court failed to send such notice through no fault of the parties, and the court acknowledged committing the mistake. *Id.* Unlike in *Edland,* in which the parties had no reason to believe that the circuit court would mail to them a copy of the order, the parties in the case now before this court had every reason to believe that the court would follow its commitment to hold the orders.

¶ 76.   Similarly, this court recently held in *Miller* that the circuit court erroneously exercised its discretion in denying the defendant's motion to vacate a $2 million default judgment under Wis. Stat. § 806.07(1)(h), in part because the circuit court's error contributed to the defendant's failure to timely answer the amended complaint. *See* 326 Wis. 2d 640, ¶ 48. In particular, the circuit court's personnel failed to list the defendants' attorney as counsel of record on the Wisconsin Circuit Court Access system. *Id.,* ¶ 22 & n.7. As a result of that error, several correspondences and pleadings were not served on the defendant or its attorney. *Id.,* ¶ 22. We concluded that the circuit court's error contributed to the extraordinary circumstances that justified relief under § 806.07(1)(h). *Id.,* ¶ 58.

¶ 77.   In this case, the circuit court failed to consider whether extraordinary circumstances brought Werner's motion to vacate and reenter the orders within Wis. Stat. § 806.07(1)(h). Instead, the circuit court erroneously concluded that it was without the power to vacate and reenter the orders given Werner's failure to bring the motion within one year after the orders were filed.

542

¶ 78. Pursuant to the circuit court's verbal and written assurances that it would not sign the orders until the case was resolved as to Hendree, (1) the order dismissing Honeck and (2) the order ruling that Hendree was ineligible for indemnification should not have been signed and filed until judgment was entered against Hendree. The record leaves no doubt that the circuit court was to hold the orders and that neither order would be filed until the case was resolved as to Hendree. Specifically, at the close of both the hearing on Honeck's motion and the hearing on the Attorney General's motion, the circuit court expressly stated on the record that it would refrain from signing the orders until the case was resolved as to Hendree. Indeed, when Werner sent a letter to the circuit court seeking to ensure that the orders were held, the court initialed its confirmation on the letter. There is simply no question that the circuit court was to hold the orders until the case was resolved as to Hendree.

¶ 79. However, contrary to that unmistakable understanding and unbeknownst to the parties, the circuit court signed and filed the orders months before judgment was entered against Hendree. We do not know the circuit court's reasons for prematurely signing the orders, but it is clear from the circuit court's explanation that the court never intended for its clerk to then file the orders before judgment was entered against Hendree. Nevertheless, Werner relied on the circuit court's previous assurances and did not appeal from the orders until after judgment was entered against Hendree. Werner's reliance on the circuit court's assurances effectively deprived her of the right to appeal. Justice rings hollow if Werner is penalized for the circuit court's failure to act according to its clear intention as stated both orally and in writing on the record.

.

¶ 80. At its core, *Edland* recognizes that when the circuit court's clear and acknowledged mistake deprives a party of its right to appeal, Wis. Stat. § 806.07 may provide a basis for vacating and reentering the order or judgment. *See* 210 Wis. 2d at 648. In this case, rather than vacating and reentering the orders in accordance with *Edland,* the circuit court admonished Werner's counsel for not bringing the motion within the one-year time limit prescribed in § 806.07(2).[21] The circuit court acknowledged its mistake but then refused to remedy it within the confines of § 806.07, effectively penalizing Werner's counsel for not discovering the mistake soon enough. In so ruling, the circuit court missed the mark. When the circuit court made multiple assurances on the record that it would not sign and file the orders until the case was resolved as to Hendree, Werner's counsel was entitled to rely on those assurances. A conclusion otherwise places the onus on parties to constantly confirm that the circuit court has lived up to its statements on the record or second-guess the court. The circuit court should exercise its authority to right its own wrong particularly when it deprives a party of the opportunity to appeal.

---

[21] It is true that in *Edland,* there was no issue as to the timeliness of the plaintiffs' motion to vacate and reenter the order. *See Edland v. Wis. Physicians Serv. Ins. Corp.,* 210 Wis. 2d 638, 642, 563 N.W.2d 519 (1997). However, it is also true that in *Edland,* the plaintiffs were not relying on any assurance by the circuit court made on the record. Indeed, the plaintiffs did not even know of the circuit court's intention to send notice of the order. That is, the only indication of the circuit court's intention to send notice of the order appeared on the face of the order itself (via a carbon copy signal), which of course was never mailed to the plaintiffs. *See id.* at 641.

¶ 81. The circuit court erred when it concluded that it was without the power to vacate and reenter the orders given Werner's failure to bring the motion within one year after the orders were filed. Accordingly, the circuit court erroneously exercised its discretion. *See Farmers & Merchs. Bank,* 12 Wis. 2d at 228.

¶ 82. We therefore reverse the circuit court's order denying Werner's motion to vacate and reenter the orders. We remand to the circuit court with instructions to vacate and reenter the order dismissing Honeck and the order ruling that Hendree was ineligible for indemnification. *See id.* (When a trial court fails to exercise a discretionary power with which it is vested on the erroneous ground that the power does not exist, "the usual practice is for the appellate court to reverse and remand in order that the trial court may exercise the discretion it previously refused to exercise. Such procedure is unnecessary in the instant appeal inasmuch as the [trial] court has stated in its memorandum decision that it would exercise its discretion to grant the relief requested if it possessed the power to do so.").

## V. CONCLUSION

¶ 83. First, we hold that the court of appeals improperly dismissed as untimely Werner's appeal of the order ruling that Hendree was ineligible for indemnification, irrespective of the date on which the order was filed. This is so because the order was not final under Wis. Stat. § 808.03(1). The order did not dispose of the entire matter in litigation as to either Werner or Hendree,[22] and accordingly, was not appealable until

---

[22] By that point in litigation, Honeck had been dismissed on the grounds of governmental immunity. Furthermore, the State was not a named party and chose not to become a party through intervention or otherwise.

July 11, 2008, when the circuit court entered judgment on Hendree's liability and Werner's damages.

¶ 84. Second, we hold that the circuit court erroneously exercised its discretion when it denied Werner's motion to vacate and reenter (1) the order dismissing Honeck and (2) the other order ruling that Hendree was ineligible for indemnification. The circuit court erroneously concluded that it was without the power to vacate and reenter the orders given Werner's failure to bring the motion within one year after the orders were filed.

¶ 85. Accordingly, we reverse both the court of appeals decision dismissing Werner's first appeal and the circuit court's order denying Werner's motion to vacate and reenter the orders. We remand to the circuit court with instructions to vacate and reenter the order dismissing Honeck and the order ruling that Hendree was ineligible for indemnification.

*By the Court.*—The decision of the court of appeals and the order of the circuit court is reversed, and the cause is remanded to the circuit court with instructions.

¶ 86. ANN WALSH BRADLEY, J. (*dissenting in part*). "Equity has a well-known maxim that equitable relief will be denied to a complainant who has slept on his rights." *Visser v. Koenders,* 6 Wis. 2d 535, 538, 95 N.W.2d 363 (1959); *see also State ex rel. Coleman v. McCaughtry,* 2006 WI 49, 25, 290 Wis. 2d 352, 714 N.W.2d 900 ("equitable remedies are not available to one whose own inaction results in the harm").

¶ 87. In considering the equities, the circuit court made a finding of fact that Werner's attorney had constructive notice within seven months of the entry of the orders. It explained that if Werner had brought a motion to vacate at that time, the motion would have been successful. Additionally, the circuit court found

that Werner's attorney had actual notice within 11 months of the orders' entry. Although the circuit court did not say whether it would have granted Werner's motion for relief had it been made at that time, it found that Werner's attorney had no excuse for failing to bring a motion once he had actual notice of the mistake.

¶ 88.  Given the fact that Werner squandered two earlier opportunities to "bring this mistake to the court's attention," the circuit court concluded that Werner's motion was not brought within a reasonable time. It therefore exercised its discretion to deny equitable relief.

¶ 89.  The majority responds by substituting its discretion for that of the circuit court. In doing so, it ignores the well-known maxim and disregards, without explanation, the rule of law that a circuit court's findings will be upheld unless they are clearly erroneous. Even though Werner never requested relief under Wis. Stat. § 806.07(1)(h), the majority concludes that the circuit court erroneously exercised its discretion in failing to grant this unrequested relief.

¶ 90.  In directing that upon remand the circuit court must vacate and reenter the orders under Wis. Stat. § 806.07(1)(h) and *Edland*,[1] the majority compromises the goal of finality of judgments. Although Werner's motion sought relief from judgment due to mistake under the statute that allows for a one-year window of opportunity, the majority has bequeathed an unlimited number of years under Wis. Stat. § 806.07(1)(h). At the same time, the majority now has transformed the "narrow" equitable exception set forth in *Edland* into an exception that may provide relief to

---

[1] *Edland v. Wis. Phys. Serv. Ins. Corp.*, 210 Wis. 2d 638, 563 N.W.2d 519 (1997).

those who have slept on their rights. As a result, final judgments are subject to attack for an unlimited number of years while at the same time the circumstances under which an attack can be made now has been broadened.

¶ 91.  I part ways with my colleagues in the majority because I would uphold both the time-honored maxim and the circuit court's findings of fact. Unlike the majority, I cannot conclude that the circuit court erroneously exercised its discretion by failing to consider an argument for relief that was never made. Because the majority substitutes its discretion for that of the circuit court and because it further undermines the finality of judgments by subjecting them to broader attack, I respectfully dissent from the part of the majority opinion that addresses relief from judgment.[2]

I

¶ 92.  The majority acknowledges that Werner had constructive knowledge that the orders had been entered within seven months of entry and actual knowledge within 11 months of entry. *See* majority op., ¶ 53. It acknowledges that even though Werner actually knew about the mistaken entry before the one-year time period for correcting mistakes under Wis. Stat. § 806.07(1)(a) had elapsed, Werner waited more than 15 months to seek redress. *See id.* Nevertheless, the ma-

---

[2] This case involves two orders, both entered April 2, 2008. This opinion addresses the majority's conclusion that the orders should be vacated and remanded under Wis. Stat. § 806.07(1)(h) and *Edland.* I agree with the majority that the order providing that Hendree was not eligible for indemnification was not a final order, and that the court of appeals has jurisdiction to review that order on the merits. *See* majority op., ¶¶ 62–65.

jority concludes that the circuit court erroneously exercised its discretion in denying the motion to vacate and reenter the orders. *Id.* at ¶ 60.

¶ 93. According to the majority, the circuit court made a mistake of law by focusing on the one-year time period under sub. (1)(a) and concluding that it had no authority to vacate and reenter the orders. *Id.*, ¶¶ 68–69, 77. Although Werner did not make a motion under sub. (1)(h), the majority admonishes the circuit court for failing to consider "whether extraordinary circumstances brought Werner's motion to vacate and reenter the orders within Wis. Stat. § 806.07(1)(h)." *Id.*, ¶ 77.[3]

¶ 94. Having determined that the circuit court should have considered whether relief was appropriate under sub. (1)(h), the majority abandons our usual practice of remanding to the circuit court for its exercise of discretion. Instead, the majority exercises its own discretion. It concludes that extraordinary circumstances are present, and it instructs the circuit court to vacate and reenter the orders. *Id.*, ¶ 73, 80–82.

---

[3] Wisconsin Stat. 806.07(1)(a) provides that "upon such terms as are just," the circuit court may relieve a party from an order for reason of "mistake, inadvertence, surprise, or excusable neglect." A motion under sub. (1)(a) must be made "not more than one year after" the order was entered. Wis. Stat. § 806.07(2).

Additionally and again "upon such terms as are just," Wis. Stat. § 806.07(1)(h) permits a circuit court to relieve a party from an order for "any other reasons justifying relief"—including a mistake—if "extraordinary circumstances" are present. Wis. Stat. § 806.07(1)(h); *State ex rel. M.L.B. v. D.G.H.*, 122 Wis. 2d 536, 550, 363 N.W.2d 419 (1985). A motion under sub. (1)(h) must be made "within a reasonable time," but it is not constrained by the rigid one-year time limit specified for sub. (1)(a).

## II

¶ 95. To determine whether the circuit court properly exercised its discretion, I turn to a review of the hearing transcript. Contrary to the majority's assertion, a review demonstrates that the circuit court did not conclude that it lacked authority to vacate and re-enter the orders given Werner's failure to bring the motion within one year after the order was filed. Rather, the circuit court considered the applicable facts, applied the applicable law, and reached a decision that a reasonable court could reach. *Kocken v. Wis. Council 40, AFSCME, AFL-CIO,* 2007 WI 72, ¶ 25, 301 Wis. 2d 266, 732 N.W.2d 828.

¶ 96. As an initial matter, it is difficult to make the case that the circuit court erroneously exercised its discretion under Wis. Stat. § 806.07(1)(h) given that Werner did not bring a motion under sub. (1)(h). Rather, Werner's motion was based on sub. (1)(a), and the circuit court correctly determined that motions under that subsection must be filed within one year of the entry of the orders. In effect, the majority pretends that Werner brought a motion under sub. (1)(h), and then it admonishes the circuit court for not considering whether the test under the imaginary motion for relief under sub. (1)(h) was met.

¶ 97. Even though Werner did not file a motion under sub. (1)(h), a review of the hearing transcript reveals that the circuit court implicitly determined that the requirements of sub. (1)(h) were not met.[4] The circuit court appears to have concluded that the motion was not made within a reasonable time.

---

[4] The relevant portion of the transcript is attached to this opinion as an exhibit.

¶ 98. During the motion hearing, the circuit court acknowledged that a mistake was made. However, it determined, "[t]here is more than a little blame to go around here."

¶ 99. The circuit court indicated that Werner's attorney should have—but failed to—make the motion to vacate the orders once it had notice that the orders had been entered. It found that Werner's attorney squandered at least two opportunities to ask the court to correct the mistake: "There were, in my estimation, at least two opportunities for plaintiff's counsel to bring this mistake to the court's attention and to rectify easily within the 1 year time period and to have the Court of Appeals decide whether that error was appropriately corrected under *Edland* . . . . But that didn't happen."

¶ 100. The court made a finding of fact that Werner's attorney should have known about the mistake within seven months of entry, at the time that he received the appeal index. The court explained that the appeal index, which showed that the orders had been filed on April 2, 2008, was sent to Werner's attorney on October 27, 2008.[5] Had he exercised reasonable diligence in uncovering the mistake in October and made a motion "at that time," the circuit court implied, it would have granted the motion: "*[I]f the court had been*

---

[5] Werner's attorney acknowledged that he received the index, but he protested that he did not discover the error because "[t]he jurisdiction issue was not a concern for me at that time":

> I filed my notice of appeal first and I ordered a transcript of what had taken place. Then I looked at the documents but I didn't put together they were entered on the April. I was focusing more on the judgment that was taking place on July 11 of '08. What I am saying is I am regular on everything. The jurisdiction issue was not a concern for me at that time, your Honor.

*confronted with a motion at that time,* I hazard a guess it would have been successful to correct that error." (Emphasis added.)

¶ 101.   The circuit court called Werner's attorney's failure to uncover the error in October of 2008 "distressing" and explained that this fact distinguished this case from *Edland:* "In *Edland* there was never any notice given, apparently, of the entry of that judgment that was intended. There is notice given here."

¶ 102.   Further, the circuit court made a finding of fact that Werner's attorney had actual knowledge of the mistaken entry in February of 2009, within 11 months of the entry of the orders. Again, Werner's attorney failed to bring a motion to correct the mistake. This second squandered opportunity occurred when Werner's attorney received opposing counsel's court of appeals brief. It noted that the orders were "entered on April 2, 2008" and argued that the court of appeals "does not have jurisdiction over an appeal" from the orders. Werner's attorney acknowledged that he read the brief and learned about the error at that time, but despite his actual knowledge, he declined to move the circuit court to vacate the orders.

¶ 103.   The circuit court did not say whether it would have granted a motion for relief had Werner brought the motion to the court's attention in February of 2009. However, it did find that there was no excuse for Werner's failure to bring a motion once Werner's attorney had actual notice of the mistake:

> Now we have the second event [when the State filed its appellate brief in February of 2009]. Was there a motion brought in this court at that time? No. I frankly do not understand the explanation or lack of explanation here. It deprived this court of making a record at that time, *whether I granted the motion then or denied it*[.]"

(Emphasis added.)

¶ 104.   In its oral ruling denying Werner's motion, the court in essence concluded that the motion was not made within a reasonable time and that, given Werner's delay in bringing the motion, extraordinary circumstances were not present: "The reality is that [the mistake] is a mistake that could have been corrected within the confines of the statute that recognizes that errors are made on a daily basis by well-intending individuals, whether they be the judge, the clerks, . . . or by the attorneys involved in the case."

¶ 105.   A circuit court's findings of fact will be upheld unless clearly erroneous. *State v. Carter,* 2010 WI 40, ¶ 19, 324 Wis. 2d 640, 782 N.W.2d 695. There is no argument advanced that the court's findings of fact are clearly erroneous. Thus, there is no indication that the circuit court's exercise of discretion was based on a mistake of fact.

¶ 106.   Further, there is no indication that the circuit court made an error of law. Rather, it is the majority here that errs by conflating the circuit court's comments regarding the October 2008 constructive notice with the circuit court's comments regarding the February 2009 actual notice.

¶ 107.   In its comments regarding February of 2009, the circuit court implicitly concluded that because Werner "slept on [her] rights"[6] for a period of months, she was not entitled to relief under Wis. Stat. § 806.07 and that the compelling equitable considerations present in *Edland* are not present here. Applying the facts and the law, the circuit court reached a decision that a reasonable court could reach. *See Kocken,* 301 Wis. 2d 266, ¶ 25.

---

[6] *Visser v. Koenders,* 6 Wis. 2d 535, 538, 95 N.W.2d 363 (1959).

¶ 108.   By substituting its judgment for that of the circuit court, the majority compromises the goal of finality of judgments. Final judgments now are subject not only to attack for an unlimited number of years, but also the circumstances under which an attack can be made have been broadened. Apparently litigants can now sleep on their rights and still obtain equitable relief.

¶ 109.   A review of this court's decision in *Edland v. Wisconsin Physicians Service Insurance Corp.*, 210 Wis. 2d 638, 563 N.W.2d 519 (1997), provides a touchstone for my analysis. In *Edland*, we were asked to determine whether a circuit court was ever permitted to vacate and reenter a judgment to effectively extend the time for appeal. We recognized that Wis. Stat. § 806.07 "attempts to achieve a balance between fairness in the resolution of disputes and the policy favoring the finality of judgments." *Id.* at 644.

¶ 110. ⋅ The equitable circumstances presented in *Edland* were compelling. When the circuit court entered judgment, it had expressed in writing its intention to notify the parties by carbon copy, but it mistakenly neglected to do so. Accordingly, "none of the parties had notice of the order until after the appeal period expired" and "the plaintiffs' failure to file a timely notice of appeal was the result of the court's error alone." *Id.* at 647.

¶ 111.   Once the court's failure to notify the parties was discovered, the appellants moved quickly to bring the circumstance to the court's attention by filing a motion under Wis. Stat. § 806.07(1)(a). *Id.* at 642. The motion was filed less than six months after judgment was entered and less than two months after the parties

discovered the court's mistake.[7] Exercising its discretion under sub. (1)(a), the circuit court vacated and reinstated the judgment, which permitted the appellants more time to appeal.

¶ 112. In our discussion of whether the court erroneously exercised its discretion by vacating the judgment, we reiterated the general rule: "Considerations of finality militate strongly against resuscitating a case after the time for appeal has expired," and the "unadorned desire to allow an appeal" will not justify a court vacating and reinstating a final judgment. *Edland,* 210 Wis. 2d at 647, 563 N.W.2d 519.

¶ 113. Nevertheless, we concluded that a blanket rule would undermine the aim of Wis. Stat. § 806.07 to provide "a balance between fairness in the resolution of disputes and the policy favoring the finality of judgments." *Id.* at 644. We concluded that under certain circumstances, a circuit court may determine that the "compelling equitable consideration[s] . . . outweigh[] the goal of finality and provide[] a basis for effectively extending the time to appeal." *Id.* at 648.

¶ 114. In *Edland,* we cautioned that our holding was "narrow," and we cited with approval the court of appeals' decision in *Eau Claire County v. Employers Insurance of Wausau. Id.* at 648, 645–47. In *Eau Claire*

[7] According to the briefs filed in that case, judgment was entered on October 9, 1995, but it was not mailed to the parties. It was not until January 24, 1996, that either party learned that judgment had been entered. Memorandum of Appellants at 1–2, *Edland v. Wis. Phys. Serv. Ins. Corp.,* 210 Wis. 2d 638 (1997) (on file at the Wisconsin Law Library). The appellants moved the circuit court to vacate and reenter the order shortly thereafter on March 19. *Edland v. Wis. Phys. Serv. Ins. Corp.,* No. 96–1883, unpublished slip. op. at 2 (Wis. Ct. App., July 31, 1996).

*County*, the court of appeals explained that an attorney's "inaction and assumptions" did not "justify the court stepping in to mitigate the situation." *Eau Claire Cnty. v. Emp'rs Ins. of Wausau*, 146 Wis. 2d 101, 111, 430 N.W.2d 579 (Ct. App. 1988). "[I]nsufficient cause is offered in the present case to justify an exception to the strong policy behind the finality of judgments." *Id.*

¶ 115. In *Edland*, relief was granted under Wis. Stat. § 806.07(1)(a), which contains a one-year time limit. By mandating relief under sub. (1)(h) (even though Werner did not request relief under sub. (1)(h)), the majority indefinitely extends the timeframe for bringing a motion with the purpose of "effectively extending the time to appeal." *See Edland*, 210 Wis. 2d at 648.

¶ 116. We have recognized that a broad application of sub. (1)(h) could undermine the goal of finality because that statute is unmoored from any specific time limit other than what is "reasonable." Accordingly, we have stated that relief under sub. (1)(h) should be granted "sparingly." *State ex rel. M.L.B. v. D.G.H.*, 122 Wis. 2d at 550.

¶ 117. At the same time that the majority bequeaths an unlimited number of years for extending the time for appeal, it now also expands the circumstances under which relief is available. By reversing the circuit court's exercise of discretion when the party squandered its opportunity to file a motion within a reasonable time, the majority lowers the burden on litigants to safeguard their appellate rights.

¶ 118. *Edland* recognized that under narrow circumstances, "compelling equitable consideration[s] . . . outweigh[] the goal of finality." 210 Wis. 2d at 648. But here, the majority fails to fully consider the equities—it

556

fails to factor Werner's inexcusable delay into its evaluation of all the "equitable considerations." It appears that the majority tacitly understands that its analysis of *Edland* is tenuous and does not support its position. At the same time that it relies on *Edland,* the majority attempts to distinguish it.[8]

¶ 119.   The majority's analysis upends the reasoning in *Eau Claire County,* which explained that failure to appeal timely due to an attorney's "inaction and assumptions" would not "justify the court stepping in to mitigate the situation." It ignores the time-honored maxim that "equitable relief will be denied to a complainant who has slept on his rights." *Visser,* 6 Wis. 2d at 538. Instead, it now broadens the scope of attack. Even those who have slept on their rights (as the circuit court found here) are entitled to equitable relief.

¶ 120.   The majority compounds its expansion of attack on the finality of judgment by failing to follow the usual practice of appellate courts. According to the majority, the circuit court erroneously concluded that it had no authority to vacate the orders once one year had passed. Majority op., ¶¶ 68–69, 77. Even if the circuit court had erroneously concluded that it had no authority to vacate the orders, however, such a result would not justify the majority imposing its own exercise of discretion.

¶ 121.   When a circuit court fails to exercise its discretionary power on the erroneous ground that the authority does not exist, it is the "usual practice" for an appellate court to reverse and remand so that the circuit court is permitted to exercise the discretion it previously failed to exercise. *Farmers & Merchs. Bank v. Reedsburg Bank,* 12 Wis. 2d 212, 228, 107 N.W.2d 169

---

[8] *See* majority op., ¶¶ 75, 80 n.21.

(1961) ("In such a situation the usual practice is for the appellate court to reverse and remand in order that the trial court may exercise the discretion it previously refused to exercise."); *see also Paschong v. Hollenbeck,* 13 Wis. 2d 415, 425, 108 N.W.2d 668 (1961).

¶ 122.   In sum, I conclude that the circuit court did not erroneously exercise its discretion by failing to consider an argument for relief that was never advanced. Because the majority substitutes its discretion for that of the circuit court and because it further undermines the finality of judgments by subjecting them to broader attack, I respectfully dissent in part.

¶ 123. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON, C.J. joins this opinion.